**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

---

ROBERT JAHODA and THOMAS KLAUS,

                    Plaintiff,                                **Civil Action No. 21-cv-0020**

v.

RXEED, LLC,

                    Defendant.

---

**DEFENDANT RXEED LLC'S
MOTION FOR SUMMARY JUDGMENT
<u>PURSUANT TO F.R.C.P. 56</u>**

        Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Rxeed, LLC

moves for summary judgment to be entered in its favor.  In support thereof, Defendant hereby

incorporates the arguments contained in the attached Memorandum of Law as though fully set

forth herein at length.

                                 Respectfully submitted,

                                   LAW OFFICE OF J. CONOR CORCORAN, P.C.

Date:  3/31/2021

                 BY:    J. CONOR CORCORAN, ESQUIRE
                           ATTORNEY FOR DEFENDANT
                           1650 MARKET STREET
                           SUITE 3600, PMB 00455
                           PHILADELPHIA, PA 19103
                           PH: (215) 735-1135
                           FAX: (215) 735-1175
                           EMAIL: CONOR@JCCESQ.COM

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

---

ROBERT JAHODA and THOMAS KLAUS,

                    Plaintiff,                    **Civil Action No. 21-cv-0020**

v.

RXEED, LLC,

                    Defendant.

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.**    **Procedural history of Plaintiffs and their counsel, and germane facts**

    **A.**  **Instant Litigation**

On February 11, 2021, the Plaintiffs, Robert Jahoda and Thomas Klaus, filed their Complaint in the above captioned matter.

The Plaintiffs allege therein a single cause of action for a Title III A.D.A. violation, arising from their disabilities as blind people, and their alleged inability to use the Defendant's website[1], which advertises the Defendant's services as a middleman, online marketplace for institutional clientele in the healthcare industry, such as physicians/hospitals, independent mom-and-pop pharmacies, and wholesale manufacturers of pharmaceuticals.

The Defendant does not, and has never, sold prescription drugs on a retail basis to individuals or the consuming public, blind or otherwise. The Defendant is a business that strictly services other businesses in the healthcare industry, as aforementioned, providing wholesale marketplace services to institutional clientele. The Defendant does not, and has never, conducted

---

[1] https://www.rxeed.com.

retail sales to individuals or otherwise operated an "online store" for the sale of pharmaceuticals to individual human beings.[2]  *Compare* <u>Complaint</u>, ¶ 8 with <u>Exhibit A</u>.

The Plaintiffs do not allege physical access or public accommodation problems at the Defendant's brick and mortar location, and indeed could not so allege, because such a location (for retail sales to individual consumers, as contemplated by the A.D.A.) does **not** exist, as the Defendant only provides wholesale marketplace services to institutional clientele, and not individual consumers of medication.  *See* Complaint, ¶¶ 1 through 52; *compare with* <u>Exhibit A</u>.

Accordingly, the Plaintiffs falsely misrepresented to the Court the nature of the Defendant's business operations, to wit:

- the Defendant "is a one-stop shop" connecting "patients, pharmacies, and drug wholesalers" through a website that operates "an online marketplace for prescriptions" (*see* <u>Complaint</u>, ¶ 5); and,

- the Defendant "denied approximately 8.1 million" blind Americans "access to its online store" (*see* <u>Complaint</u>, ¶ 8); and,

- the Defendant "enters into contracts for the sale of its products with residents of Pennsylvania" (*see* <u>Complaint</u>, ¶ 15); and,

- the Defendant's website provides "barriers" to the Plaintiffs that deny them "full and equal access to Defendant's online goods, content and services" (*see* <u>Complaint</u>, ¶ 16); and,

- the Defendant's website "allows shoppers to research and purchase Defendant's products from the comfort and convenience of their own homes and arrange for home delivery" (*see* <u>Complaint</u>, ¶ 21); and,

- the Plaintiffs are "denied the benefit of, much of the content and services" available on the Defendant's "online store" (*see* <u>Complaint</u>, ¶ 23); and,

- the "Plaintiffs found Defendant's Website to be unusable due to various barriers that deny them full and equal access to Defendant's online store." (*see* <u>Complaint</u>, ¶ 26); and,

---

[2] *See* Affidavit signed by Omar Hassad, President of Defendant Rxeed, LLC, a true and correct copy of which is attached hereto and incorporated herein as <u>Exhibit A</u>.

- the Defendant prohibits "Plaintiffs full and equal access to all the services the Website offers, and now deter(s) them from attempting to use the Website." (*see* <u>Complaint</u>, ¶ 27); and,

- the Plaintiffs deny "individuals with visual disabilities opportunities to participate and benefit from the goods, content, and services available on its Website" (*see* <u>Complaint</u>, ¶ 46).

*See* <u>Complaint</u>, ¶¶ 5, 8, 15, 16, 21, 23, 26, 27, and 46.

In addition, while the Plaintiffs represent to the Court that Title III applies to websites and mobile applications in the Ninth Circuit (*see* <u>Complaint</u>, ¶ 34), the Plaintiffs' Complaint is utterly vacuous as to websites under the jurisdiction of the Third Circuit or, more specifically, the W.D.Pa. *See* <u>Complaint</u>, ¶¶ 1 through 52.

On February 17, 2021, by Order[3] of the Hon. Arthur J. Schwab of the W.D.Pa., the above captioned matter against Defendant Rxeed, LLC was consolidated with approximately nineteen (19) other lawsuits, all of which were also filed by counsel for the Plaintiffs, from January 6, 2021 through February 11, 2021. *See* <u>Exhibit B</u>.

**B.  Plaintiffs and their counsel, R. Bruce Carlson, are egregious A.D.A. "testers"[4]**

Of the nineteen (19) cases filed by Plaintiffs' counsel in <u>Exhibit B</u>, fifteen (15) involve Plaintiff Robert Jahoda and/or Plaintiff Thomas Klaus, and all of them consist of virtually the same number of pages (16 to 18 pages in length), virtually the same number of averments and the same series of allegations, with identical headings and the same, boilerplate inclusion of screengrabs from each defendant's website, as the instant complaint against Defendant Rxeed

---

[3] A true and correct copy of this 2/17/21 Order is attached hereto and incorporated herein as <u>Exhibit B</u>.

[4] *See* <u>Harty v. Burlington Coat Factory of Pa.</u>, No. 11-cv-01923, 2011 WL 2415169 at 1, footnote 5 (E.D.Pa. June 16, 2011) ("Testers are qualified individuals with disabilities who visit places of public accommodation to determine their compliance with Title III.") *Compare with* <u>Defense Against The Dark Arts of Copyright Trolling</u>, 103 Iowa L. Rev. 571 (2018) (A.D.A. testers are akin to the scourge of "copyright trolls" who abuse the copyright statute, and unlawfully use the same as a fulcrum for the extortion of quick settlements from unlucky defendants.)

herein, all claiming a single violation of Title III because each defendant's website, like Defendant Rxeed, is allegedly in noxious violation of the A.D.A. *Compare* <u>Exhibit B</u> *with* <u>Plaintiffs' Complaint</u>.

Since 2012, Plaintiff Robert Jahoda has filed at least one hundred forty-five (145) lawsuits in the W.D.Pa. for Title III A.D.A. violations, and a true and correct copy of the PACER docket information concerning the same is attached hereto and incorporated herein as <u>Exhibit C</u>.

Since 2012, the Hon. Arthur J. Schwab has presided over at least seventy-six (76) of Plaintiff Robert Jahoda's boilerplate, Title III A.D.A. lawsuits in <u>Exhibit C</u>, all of which and/or a significant proportion of which have been filed by R. Bruce Carlson and/or his law firm.

Since 2019, Plaintiff Thomas Klaus has filed at least forty-two (42) lawsuits in the W.D.Pa. for Title III A.D.A. violations, and a true and correct copy of the PACER docket information concerning the same is attached hereto and incorporated herein as <u>Exhibit D</u>.

Since 2019, the Hon. Arthur J. Schwab has presided over at least thirty-three (33) of Plaintiff Thomas Klaus' boilerplate, Title III A.D.A. lawsuits in <u>Exhibit D</u>, all of which and/or a significant proportion of which have been filed by R. Bruce Carlson and/or his law firm.

Therefore, since 2012, the Hon. Arthur J. Schwab has presided over identical Title III A.D.A. claims filed by R. Bruce Carlson and/or his law firm, on behalf of Plaintiffs Robert Jahoda and/or Thomas Klaus, on at least ninety-nine (99) occasions amongst the two plaintiffs, constituting a considerable percentage and/or the majority of the cases in which Mr. Carlson and/or the Plaintiff(s) have litigated these egregious, A.D.A "tester" attempts at extortion. *See* <u>Exhibits B through D</u>.

Upon information and belief, each and every one of these lawsuits is a lubricious, baseless, and unlawful attempt, on the part of Mr. Carlson and the Plaintiffs herein, to pressure

each of the enumerated defendants in <u>Exhibits B through D</u>, including the Defendant herein, to pay a quick, lump sum settlement, rather than incur the costs involved in litigating a rather novel (though utterly vacuous, and unquestionably contemptuous) manipulation of Title III protections for the disabled.

Undersigned counsel respectfully submits that although no counsel, for any of the enumerated defendants, has disclosed any specifics concerning any settlement amounts, upon information and belief, Mr. Carlson begins the bidding at $10,000 (allocating the lion's share for himself and his firm, apportioning a miniscule portion thereof for the Plaintiffs), and has done so in most if not all of the aforementioned cases before the Hon. Arthur J. Schwab enumerated in <u>Exhibits B through D</u>, amounting to millions of dollars in extortionately compelled settlements and attorney's fees, since 2012.

Mr. Carlson has further compounded the vexatious and baseless character of each of the aforementioned complaints, including against Defendant Rxeed LLC herein, through his own sloppy, duplicative factual presentations.  None of the lawsuits enumerated in <u>Exhibit B</u> set forth the exact address of the Plaintiff(s) therein, and/or the date(s) and/or time(s) in which said Plaintiff(s) attempted to solicit the online website(s) of the defendant(s) listed therein, and/or any identification information about who performed "further investigations" on the Plaintiff(s)' behalf (as usually set forth in averment 24 through 26 of the boilerplate complaints in <u>Exhibit B</u>.) Undersigned counsel for the Defendant respectfully submits that this is prima facie evidence that Mr. Carlson and the Plaintiff(s) are contriving concocted allegations of Title III violations, and churning them out one sitting at a time.  *See* <u>Exhibits B through D</u>.

Finally, the prima facie evidence of this pattern of vexatious and baseless litigation from Mr. Carlson and his plaintiffs, including Plaintiffs Jahoda and Klaus herein, is compounded yet

again by the lack of specific home addresses for any of the Plaintiffs – and indeed, the cover

sheets for these cases in Exhibit B list Mr. Carlson's office as the address for the plaintiffs,

and/or at approximately averment 18 of the complaints, merely states the district and/or town in

which a plaintiff lives, foregoing the provision of a specific address, as is the usual practice in

initial federal pleadings.  *See* Exhibit B.

Undersigned counsel suspects the lawsuits filed by Mr. Carlson and Plaintiffs Jahoda and

Klaus, in Exhibits C and D, suffer from the same repetitive defects, based upon a single, point

propounded within each of the complaints in Exhibit B:  Mr. Carlson and/or the Plaintiffs know,

or should know, that in the Third Circuit, websites are not required to be compliant with the

A.D.A., and that is why Mr. Carlson and/or the Plaintiffs cite, instead, to the authority of the

Ninth Circuit, in or around averment 34 of each the complaints in Exhibit B.[5]  (Perhaps tellingly,

Mr. Carlson and/or the Plaintiffs avoid any conspicuous citation to two seminal holdings[6] from

Hon. Arthur J. Schwab, which have found **rare** exceptions to the general Third Circuit

prohibition of A.D.A. applicability to websites, as further set forth at length herein *infra.*)

## II.   ARGUMENT

### A.  Standards for a Motion for Summary Judgement per Rule 56

Summary judgment is appropriate if the moving party can show there is no genuine issue

as to any material fact, and the moving party is entitled to judgment as a matter of law.  *See*

F.R.C.P. 56(c).  When ruling on a motion for Summary Judgment, the Court must view the

---

[5] *Compare* Ford v. Schering-Plough Corporation, Peoples v. Discover Fin. Servs., Inc., J.H. by and through Holman v. Just for Kids, Inc., Kidwell v. Fla. Comm'n on Human Relations, Noah v. AOL Time Warner, Access Now, Inc. v Southwest Airlines and Cullen v. Netflix, Inc., discussed *infra* (citations omitted).

[6] *See* Gniewkowski v. Lettuce Entertain You Enterprises, Inc., 251 F. Supp. 3d 908, W.D.Pa., Apr. 21, 2017; *see also* Suchenko v. Ecco USA, Inc., 2018 WL 3933514, W.D.Pa. Aug 16, 2018.

evidence in the light most favorable to the non-movant.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348 (1986).

The utter vacuum of commercial sales to individual human beings on the Defendant's website, in conjunction with Exhibit B's consolidation of the above captioned matter with nineteen (19) other identical lawsuits, and the overwhelmingly demonstrable history of ADA testing by Plaintiffs and their counsel (largely under the jurisdiction of the Hon. Arthur J. Schwab), warrant summary judgment in favor of the Defendant, because the Plaintiffs' Complaint fails, by virtue of these flaws, to state a claim upon which relief may be granted under current Title III jurisprudence, as they have no "facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Defendant Rxeed, LLC respectfully requests not only dismissal with prejudice, given the absence of a colorable Title III claim in the Plaintiff's Complaint, but a Rule to Show Cause for Rule 11(c)(3) sanctions against the Plaintiffs and/or their counsel, and one which should be particularly conducted by the Hon. Arthur J. Schwab, given the utter chutzpah and frequency with which Mr. Carlson and his Plaintiffs have regularly, routinely, and unlawfully presented all of the aforementioned, baseless lawsuits to Judge Schwab's chambers, in order to leverage an outrageous pattern of unlawful attempts at baseless, A.D.A. settlement extortions.

**B.  Facts Alleged In Plaintiffs' Complaint Fail To State A Claim Under Title III**

The Plaintiffs' Title III claim hinges on their alleged inability to use the Defendant's website, which advertises the Defendant's services as an online marketplace for institutional clientele in the healthcare industry, such as physicians/hospitals, independent mom-and-pop pharmacies, and wholesale manufacturers of pharmaceuticals, to sell to one another.

However, the Defendant has never sold prescription drugs to individuals or the

consuming public, such as the Plaintiffs herein, through its website.  The Defendant is a business that strictly services other businesses in the healthcare industry, as aforementioned, providing online marketplace services to institutional clientele.  The Defendant does not, and has never, conducted retail sales to individuals or otherwise operated an "online store" for the sale of pharmaceuticals to individual human beings.  *Compare* Complaint, ¶ 8.  *See also* https://www.rxeed.com.  *See also* Exhibit A.

The Plaintiffs' Title III claim does not allege physical access or public accommodation problems at the Defendant's brick and mortar location, as required for a Title III violation, and indeed could not so allege, because such a location does **not** exist.  The Defendant only provides online marketplace services to institutional clientele, and not individual consumers of medication.  *See* Complaint, ¶¶ 1 through 52.  *See also* Exhibit A.

*This* is the perilous gravamen of the Plaintiffs' boilerplate, Title III Complaint.  *See* Complaint, ¶¶ 1 through 52; *compare with* Exhibit B *through* Exhibit D.

In the Third Circuit, however, Title III only applies to actual, physical, brick and mortar places of public accommodation, and not a website (such as that of the Defendant herein) offering an online pharmaceutical marketplace strictly for institutional clientele.

The Third Circuit could not be any clearer: "The plain meaning of Title III is that a public accommodation is a place…This is in keeping with the host of examples of public accommodations provided by the ADA, all of which refer to places."  Ford v. Schering-Plough Corporation, 145 F.3d 601, 612-614 (3d Cir. May 22, 1998), *citing* 42 U.S.C. § 12181(7).

The germane section of the ADA states "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns,

leases (or leases to), or operates a place of public accommodation." *See* 42 U.S.C. § 12182(a).

The Third Circuit has also explicitly declined to expand the definition of public accommodations beyond physical places. "Despite Peoples' request that we 'clarify or reconsider' our holding in Ford and extend our interpretation of public accommodations to include things other than physical places, we are bound by our precedent." *See* Peoples v. Discover Fin. Servs., Inc., 387 F. App'x 179, 183 (3d Cir. 2010).

The Third Circuit's decision to confine Title III to physical places has also been replicated by the Fifth, Sixth, and Ninth Circuits. *See* J.H. by and through Holman v. Just for Kids, Inc., 248 F. Supp. 3d 1210, 1216 (D. Utah 2017), *citing* Ford, 145 F. 3d at 612-614.

Websites are explicitly excluded from inclusion in the definition of public accommodation. *See* Kidwell v. Fla. Comm'n on Human Relations, 2017 WK 176897, at *5 (M.D. Fla. January 17, 2017) (the websites of Busch Gardens and SeaWorld are not physical or public accommodations under the ADA); Noah v. AOL Time Warner, 261 F.Supp.2d 532, 544 (E.D. Va. 2003) (AOL chat rooms are not places of public accommodation); Access Now, Inc. v Southwest Airlines, 227 F.Supp.2d 1312, 1318 (S.D. Fla. 2002) (Southwest Airlines' website is not a place of public accommodation); Cullen v. Netflix, Inc., 880 F.Supp.2d 1017 (N.D. Ca. 2012). *But see* Robles v. Domino's Pizza, LLC, 913 F.3d 898 (9th Cir. 2019), *citing* Robles v. Yum! Brands, Inc., 2018 WL 566781, at *4 (C.D. Cal. Jan. 24, 2018); Rios v. N.Y. & Co., Inc., 2017 WL 5564530, at *3 (C.D. Cal. Nov. 16, 2017); Reed v. CVS Pharmacy, Inc., 2017 WL 4457508, at *3 (C.D. Cal. Oct. 3, 2017); Gorecki v. Hobby Lobby Stores, Inc., 2017 WL 2957736, at *3-4 (C.D. Cal. June 15, 2017); *Target,* 452 F.Supp.2d at 953; Gomez v. Gen. Nutrition Corp., 323 F.Supp.3d 1368, 1375-76 (S.D. Fla. 2018); Castillo v. Jo-Ann Stores, LLC, 286 F.Supp.3d 870, 881 (N.D. Ohio 2018); Gil v. Winn-Dixie Stores, Inc., 257 F.Supp.3d

9

1340, 1348-49 (S.D. Fla. 2017) (for the general proposition that websites are subject to the A.D.A. in those districts and circuits).

Finally, in the W.D.Pa., while it appears that the Hon. Arthur J. Schwab has green lit the concept of a commercial entity's website for liability under the A.D.A. (as requested by Mr. Carlson's law firm, yet again, in Gniewkowski v. Lettuce Entertain You Enterprises, Inc., 251 F. Supp. 3d 908, W.D.Pa., Apr. 21, 2017 and Suchenko v. Ecco USA, Inc., 2018 WL 3933514, W.D.Pa. Aug 16, 2018), Judge Schwab reserved the extension of A.D.A. applicability only to those websites in which blind consumers actually accessed services available to the public, unlike here, where Defendant Rxeed provides neither goods nor services to individual consumers, such as the Plaintiffs herein, blind or otherwise.  *Compare with* Exhibit A.  *See also* Murphy v. Bob Cochran Motors, Inc., No. 19-cv-239-SPB (W.D.Pa., Sept. 28, 2020, Hon. Susan Paradise Baxter) (*citing* the Gniewkowski reasoning of the Hon. Arthur J. Schwab).

Defendant accordingly requests that the Complaint be dismissed with prejudice, as its website does not offer pharmaceuticals for sale to any individual consumers such as Plaintiffs herein, blind or otherwise, to constitute a Title III violation.

## C.  Plaintiffs' allegations under Title III would violate 5th and/or 14th Due Process Amendments to the U.S. Constitution

Compounding the vacuum of Title III application to websites in the Third Circuit, the Department of Justice has no guidelines for the same, either.

Accordingly, the Plaintiff's reliance[7] on a letter from DOJ Assistant A.G. Stephen E. Boyd, to U.S. House of Representative Ted Budd, does not plug the holes in the Plaintiffs' instant Title III Titanic.  *See* Robles v. Dominos Pizza, LLC, 2017 WL 1330216 (C.D. Cal.

---

[7] *See* Plaintiffs' Complaint, ¶¶ 1, 33.

March 20, 2017) (WCAG Guidelines, in the absence of DOJ adoption or insight, would violate due process). The <u>Robles</u> court accordingly dismissed that case.[8]

To require the Defendant herein to adhere to unstable and unofficial guidelines would be in flagrant violation of the Due Process Clauses of the Fifth and/or Fourteenth Amendments to the U.S. Constitution, with all of their procedural and substantive due process guarantees. Defendant therefore respectfully submits that <u>Robles</u> is instructive in this regard, warranting dismissal of Plaintiff's Complaint with prejudice.

## III.   **CONCLUSION**

Defendant respectfully requests that the above captioned matter be dismissed with prejudice, and that this Honorable Court issue a Rule 11(c)(3) Order to Show Cause.

Respectfully submitted,

LAW OFFICE OF J. CONOR CORCORAN, P.C.

Date:  3/31/2021

BY:   J. CONOR CORCORAN, ESQUIRE
ATTORNEY FOR DEFENDANT
1650 MARKET STREET
SUITE 3600, PMB 00455
PHILADELPHIA, PA 19103
PH: (215) 735-1135
FAX: (215) 735-1175
EMAIL: CONOR@JCCESQ.COM

---

[8] *But see* <u>Robles v. Domino's Pizza, LLC</u>, 913 F.3d 898 (9th Cir. 2019).

11