IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONALD C. KOLESAR, and<br>THOMAS KLAUS,<br><br>    Plaintiffs,<br><br>v.<br><br>DRIPDROP HYDRATION, INC.,<br><br>    Defendant. | Lead Case No. 1:21-cv-20 |
| ROBERT JAHODA,<br><br>    Plaintiff,<br><br>v.<br><br>DD KARMA, LLC,<br><br>    Defendant. | Member Case No. 2:21-cv-39 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND ORDER FOR PERMANENT INJUNCTION**

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, Plaintiff Robert Jahoda moves the Court for entry of default judgment against Defendant DD Karma, LLC. Rule 55(b)(2) authorizes the Court to enter a default judgment against a party when default has been entered by the Clerk of Court. Here, because Defendant has willfully failed to appear in this case, and for the reasons discussed below, an entry of default judgment of immediate injunctive relief is appropriate. In addition to the relief requested below, Plaintiff reserves the right to submit future fee petitions to reimburse him for the subsequent costs he incurs to monitor Defendant's compliance with the Court's Order. Monitoring by Plaintiff is necessary—and compensable—to ensure Defendant changes its corporate policies in a meaningful manner that will cause its website, dermaflash.com,

1

to become and remain accessible to individuals with visual disabilities. *See People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 235 (3d Cir. 2008) ("This Court, like other Courts of Appeals, allows fees to be awarded for monitoring and enforcing Court orders and judgments.").

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is, and at all times relevant hereto, has been legally blind. He is a member of a protected class under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. *See* Complaint, Member Case No. 2:21-cv-00039-AJS, ECF 1 at¶ 17 (Jan. 8, 2021) ("Compl."). Defendant DD Karma, LLC is an online beauty retailer that sells various devices and other beauty personal items to the public through its website, dermaflash.com ("Website"). Compl., ¶¶ 4-5. Defendant is a Delaware limited liability company with a registered agent address of The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. *See* DD Karma, LLC, Delaware Entity Details (**Exhibit A**). Defendant's headquarters is located at 415 N. Aberdeen Street, 2nd Floor, Chicago, Illinois 60654. *See* DD Karma, LLC, Illinois Entity Details (**Exhibit B**).

On January 8, 2021, Plaintiff filed a Complaint for Declaratory and Injunctive Relief against Defendant seeking a permanent injunction requiring a change in Defendant's corporate policies to cause its online store to become and remain accessible to individuals who are partially sighted, visually impaired, or totally blind. *See* Compl.

Plaintiff served the Complaint and Summons on Amy McLaren, Managing Agent, who is designated by law to accept service on behalf of Defendant at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801 on February 18, 2021 by personal service. *See* Summons/Return of Service Returned Executed at Lead Case No. 1:21-cv-20-AJS, at ECF No. 10. The Summons instructed Defendant to answer or respond within twenty-

one (21) days of service. Defendant's answer due date was March 11, 2021. *Id.* Defendant never answered the Complaint.

On June 8, 2021, Plaintiff requested the Clerk to enter Default against Defendant for failure to plead or otherwise defend. *See* Request by Robert Jahoda for Entry of Default against DD Karma, LLC., Lead Case No. 1:21-cv-20-AJS, at ECF 104. Without opposition, the Clerk entered Default against Defendant on June 10, 2021. *See* Clerk's Entry of Default as to DD Karma, LLC, Lead Case No. 1:21-cv-20-AJS, at ECF 111.

On June 11, 2021, Plaintiff's counsel served a copy of Plaintiff's Request for Entry of Default and the Clerk's Entry of Default as to DD Karma, LLC upon Defendant via FedEx at its registered agent address. "A. Rice" signed for the delivery on June 15, 2021. *See* Registered Agent FedEx Proof-of-Delivery (**Exhibit C**). On June 11, 2021, Plaintiff's counsel attempted to serve a copy of Plaintiff's Request for Entry of Default and the Clerk's Entry of Default as to DD Karma, LLC upon Defendant via FedEx at its headquarters. FedEx was "Unable to deliver shipment…" *See* Headquarters FedEx Proof-of-Non-Delivery (**Exhibit D**).

Defendant still has not answered or otherwise appeared in this litigation. Nor has it or its representative contacted Plaintiff's counsel.

**LEGAL STANDARD**

Rule 55(b)(2) of the Federal Rules of Civil Procedure authorizes the Court to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading. The entry of default judgment by the Court is a matter of discretion. *See Innovative Off. Products, Inc. v. Amazon.com, Inc.*, Case No. 10-CV-4487, 2012 WL 1466512, at *2 (E.D. Pa. Apr. 26, 2012) (citing cases). "Default judgment establishes the defaulting party's liability for the well-pleaded allegations of a complaint." *Pair Networks, Inc. v. Lim Cheng Soon*, Case No. 12-CV-00896-TFM,

2013 WL 452565, at *1 (W.D. Pa. Feb. 6, 2013). "A consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Id*. (*quoting Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). "In other words, a party's default is almost universally deemed an admission of the Plaintiff's well-pleaded allegations of fact pertaining to liability." *Id*.

The Third Circuit has enumerated three factors that govern a district court's determination as to whether a default judgment should be entered: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

**ARGUMENT**

**I.      THE COURT SHOULD ENTER DEFAULT JUDGMENT.**

The Court should enter default judgment against Defendant because each of the *Chamberlain* factors favors entry of default judgment: (1) Plaintiff will be prejudiced and unfairly denied his right to access Defendant's online goods and services if default judgment is denied; (2) Defendant has no litigable defense against Plaintiff's assertions of discrimination; and (3) Defendant's delay is due to its own culpable conduct. *See Chamberlain*, 210 F.3d at 164.

**A.      Plaintiff Will Be Prejudiced If The Court Denies Default Judgment.**

Despite proper service and having notice of the Clerk's entry against it, Defendant has made clear that it does not intend to defend Plaintiff's claims. Consequently, Plaintiff is without knowledge of Defendant's accessibility policies, if any, or whether it has taken any steps to remediate the barriers blocking Plaintiff's access. Indeed, as of Plaintiff's pending motion, Defendant still has not posted an Accessibility Policy on its Website, or otherwise offered any

4

instructions to consumers who cannot access the Website's content with a screen reader. Plaintiff will be greatly prejudiced if default is denied, because nothing will prevent Defendant from continuing to discriminate against individuals with disabilities on the Internet.

**B.     Defendant Does Not Have Any Litigable Defense.**

Defendant has failed to answer Plaintiff's Complaint, and thus deliberately chosen not to appear in this Court. As a result, nothing in the record suggests that Defendant has a litigable defense. *See Broad. Music, Inc. v. Spring Mount. Area Bavarian Resort, Ltd.*, 555 F. Supp. 2d 537, 542 (E.D. Pa. 2008) (entering default judgment where there was "nothing in the record to suggest that Defendants have a litigable defense as to liability"); *Securities and Exch. Commn. v. Fortitude Group, Inc.*, Case No. 16-CV-50, 2017 WL 818604, at *2 (W.D. Pa. Feb. 10, 2017), *report and recommendation adopted*, Case No. 16-CV-50, 2017 WL 782847 (W.D. Pa. Mar. 1, 2017) (finding that "because Defendant…has failed to participate in this litigation in any way, the Court cannot speculate as to whether it has a litigable defense").

**C.     Defendant's Delay Is Due To Culpable Conduct.**

As the Third Circuit has explained, "culpable conduct" refers to actions that are "taken willfully or in bad faith." *Chamberlain*, 210 F.3d at 164. (*citing Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 124 (3d Cir. 1983)). A defendant's failure to defend itself against allegations in a complaint may be grounds for concluding that the defendant's actions are willful, and therefore culpable. *Broad Music*, 555 F. Supp. 2d at 542. Here, Plaintiff filed a Complaint, which was personally served with the Summons on February 18, 2021. *See* Summons/Return of Service Returned Executed at Lead Case No. 1:21-cv-20-AJS, at ECF No. 10. Defendant did not appear. The Clerk entered default against Defendant on June 10, 2021. *See* Clerk's Entry of Default as to DD Karma, LLC, Lead Case No. 1:21-cv-20-AJS, at ECF 111. Plaintiff's counsel provided a copy

of the Clerk's Entry to Defendant via FedEx to Defendant's registered agent address and attempted FedEx delivery of the same at Defendant's headquarters (**Exhibits C and D**). Still, Defendant has not appeared.

The Court should find Defendant's failure to appear as willful and intentional, and constitutes the type of culpable conduct that compels default judgment. *See, e.g., SEC v. Desai*, 672 Fed. Appx. 201, 203 n.1 (3d Cir. 2016) (unpublished) (holding district court entry of default judgment not abuse of discretion given failure of corporate defendant to obtain counsel).

**II.  PLAINTIFF IS ENTITLED TO INJUNCTIVE RELIEF.**

Injunctive relief is proper here because (1) Plaintiff has and will continue to suffer irreparable injury from Defendant's unchecked practices of disability discrimination; (2) monetary damages are inadequate, and indeed unavailable, to compensate Plaintiff for injuries he has suffered; (3) Plaintiff continues to suffer hardship from Defendant's ongoing discrimination; and (4) a permanent injunction ending Defendant's discriminatory business practices serves the public interest. *See eBay Inc. v. Mercexchange, L.L.C.*, 547 U.S. 388, 393 (2006).

**A.  Plaintiff Has Suffered Irreparable Injury.**

This Court has found repeatedly that plaintiffs who cannot access a public accommodation's online content suffer an injury-in-fact under Article III of the ADA. *See Gniewkowski v. Lettuce Entertain You Enterprises, Inc.*, 251 F. Supp. 3d 908, 913–14 (W.D. Pa. 2017) ("*Lettuce Entertain You*"); *see also Suchenko v. ECCO USA, Inc.,* 2018 WL 3660117 (W.D. Pa. Aug. 2, 2018); *Suchenko v. ECCO USA, Inc.,* 2018 WL 3933514 (W.D. Pa. Aug. 16, 2018). In *Lettuce Entertain You*, the plaintiffs could not access Ameriserv's online banking nor Churchill Downs' online entertainment services. Similarly, in this case, barriers on Defendant's Website deny Plaintiff access to the merchandise Defendant sells online. Compl. ¶ 24. Just as these barriers

establish Plaintiff's injury-in-fact for standing, they too establish the irreparable harm for injunctive relief in this case.

B. **The ADA Contemplates the Type of Injunctive Relief that Plaintiffs Seek.**

In relevant part, the ADA requires:

> In the case of violations of…this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities…Where appropriate, injunctive relief shall also include requiring the…modification of a policy[.]

42 U.S.C. § 12188(a)(2). Consistent with § 12188(a)(2), Plaintiff's Complaint seeks a permanent injunction requiring that:

a) Defendant retain a qualified consultant acceptable to Plaintiff ("Approved Accessibility Consultant") who shall assist it in improving the accessibility of its Website, including all third party content and plug-ins, so the goods and services on the Website may be equally accessed and enjoyed by individuals with vision related disabilities;

b) Defendant work with the Approved Accessibility Consultant to ensure that all employees involved in website development be given accessibility training on a biennial basis, including onsite training to create accessible content at the design and development stages;

c) Defendant work with the Approved Accessibility Consultant to perform an automated accessibility audit on at least a quarterly basis to evaluate whether Defendant's Website may be equally accessed and enjoyed by individuals with vision related disabilities on an ongoing basis;

d) Defendant work with the Approved Accessibility Consultant to perform end-user accessibility/usability testing on at least a quarterly basis with said testing to be performed by humans who are blind or have low vision, or who have training and experience in the manner in

which persons who are blind use a screen reader to navigate, browse, and conduct business on websites, in addition to the testing, if applicable, that is performed using semi-automated tools;

e) Defendant incorporate all of the Approved Accessibility Consultant's recommendations within sixty (60) days of receiving the recommendations;

f) Defendant work with the Approved Accessibility Consultant to create an Accessibility Policy that will be posted on its Website, along with an e-mail address, instant messenger, and toll free phone number to report accessibility-related problems;

g) Defendant directly link from the header on each page of the Website a statement that indicates that Defendant is making efforts to maintain and increase the accessibility of its Website to ensure that persons with disabilities have full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Defendant through the Website;

h) Defendant accompany the public policy statement with an accessible means of submitting accessibility questions and problems, including an accessible form to submit feedback or an email address to contact representatives knowledgeable about the Accessibility Policy;

i) Defendant provide a notice, prominently and directly linked from the header on each page of the Website, soliciting feedback from visitors to the Website on how the accessibility of the Website can be improved. The link shall provide a method to provide feedback, including an accessible form to submit feedback or an email address to contact representatives knowledgeable about the Accessibility Policy;

j) Defendant provide a copy of the Accessibility Policy to all web content personnel, contractors responsible for web content, and Client Service Operations call center agents ("CSO Personnel") for the Website;

k) Defendant train no fewer than three of its CSO Personnel to automatically escalate calls from users with disabilities who encounter difficulties using the Website. Defendant shall have trained no fewer than three of its CSO personnel to timely assist such users with disabilities within CSO published hours of operation. Defendant shall establish procedures for promptly directing requests for assistance to such personnel including notifying the public that customer assistance is available to users with disabilities and describing the process to obtain that assistance.;

l) Defendant modify existing bug fix policies, practices, and procedures to include the elimination of bugs that cause the Website to be inaccessible to users of screen reader technology; and

m) Plaintiff, his counsel, and its experts monitor the Website for up to two (2) years after the Approved Accessibility Consultant validates the Website is free of accessibility errors/violations to ensure Defendant have adopted and implemented adequate accessibility policies. To this end, Plaintiff, through his counsel and its experts, shall be entitled to consult with the Approved Accessibility Consultant at their discretion, and to review any written material, including but not limited to any recommendations the Approved Accessibility Consultant provides Defendant.

Compl., ¶ 10. This District has upheld similar requests for injunctive relief under the ADA, explaining:

> Title III explicitly provides that injunctive relief includes "modification of a policy" and Defendant has not demonstrated that the word "policy" is limited to practices such as, for example, those prohibiting service animals. In addition, the regulations which Plaintiff cites contemplate an ongoing process of effective ADA compliance, which Plaintiff has challenged in this case. And the cases she cites acknowledge that Title III entities are under an ongoing duty to review their places of public accommodation for compliance and to remediate them accordingly.

*Heinzl v. Cracker Barrel Old Country Stores, Inc.*, Case No 14-CV-1455, 2016 WL 2347367, at *17 (W.D. Pa. Jan. 27, 2016), *report and recommendation adopted as modified sub nom. Heinzl v. Cracker Barrel Old Country Store, Inc.*, Case No. 14-CV-1455, 2016 WL 1761963 (W.D. Pa. Apr. 29, 2016). Consistent with the authority from this District and elsewhere, the Court should order a permanent injunction consistent with Plaintiff's request.

## C. The Balance of Hardships Favors an Injunction.

Absent a permanent injunction, Plaintiff will suffer greater hardship than will Defendant should an injunction be ordered. Where there is no evidence of serious detriment to the defendant's business, the balance of hardships factor favors a permanent injunction. *See Judkins v. HT Window Fashions Corp.*, 704 F. Supp. 2d 470, 477-78 (W.D. Pa. 2010) (finding the hardships factor to favor a permanent injunction where no evidence indicated that injunction "would have a serious effect on [defendant's] business"). Here, there is nothing in the record to indicate that an injunction would cause permanent harm to Defendant's business. Plaintiff's requested injunction is appropriately narrow to ensure that Defendant bring its Website into compliance with existing law under the ADA, and allows Defendant to continue offering its online goods and services during the remediation period—at the end of which, Defendant's goods and services will be accessible to more than 8 million American customers who have difficulty seeing. Compl. ¶ 7. Thus, the balance of hardships weighs in Plaintiff's favor.

## D. A Permanent Injunction Will Serve The Public Interest.

The Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, established a "comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Congress found that "historically, society has tended to isolate and segregate individuals with disabilities," and that "such forms of

discrimination…continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress specifically found that persons with disabilities,

> continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities.

42 U.S.C. § 12101(a)(5). As a result, "people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally." 42 U.S.C. § 12101(a)(6). The permanent injunction that Plaintiff requests furthers public interest by breaking from this "history of purposeful unequal treatment" and ensuring Plaintiff and other individuals with disabilities can access Defendant's online content, and are not left in the dust of the Cyber Age.[1]

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court to Enter a Default Judgment against Defendant:

1. Declaring that at the commencement of this action, Defendant was in violation of Title III of the ADA and its implementing regulations in that Defendant took no action that was reasonably calculated to ensure that its Website, dermaflash.com is fully accessible to, and independently usable by, blind individuals.

---

[1] "While we now may be coming to the realization that the Cyber Age is a revolution of historic proportions, we cannot appreciate yet its full dimensions and vast potential to alter how we think, express ourselves, and define who we want to be. *The forces and directions of the Internet are so new*, so protean, and so far reaching that *courts must be conscious that what they say today might be obsolete tomorrow.*" *Andrews v. Blick Art Materials, LLC*, Case No. 17-CV-767, 2017 WL 3278898, *1 (E.D. N.Y. Aug. 1, 2017) (a website accessibility case *citing Packingham v. North Carolina*, 137 S. Ct. 1730, 1731 (U.S. 2017).

2. Ordering, pursuant to 42 U.S.C. § 12188(a)(2), Defendant, and all persons and entities in privity, combination, participation or acting in concert with Defendant, including but not limited to its agents, servants, employees, franchisees, distributors, licensees, successors and assigns, attorneys, officers and directors, whether on behalf of any other business entity heretofore or hereafter created, shall by the deadline provided take the following steps necessary to bring its Website, dermaflash.com, into full compliance with the requirements set forth in the ADA and its implementing regulations, so that it is fully accessible to, and independently usable by, blind individuals:

| Compl. ¶ | Relief Requested | Defendant's Deadline to notify Plaintiff's counsel of completion |
|---|---|---|
| 10(a) | Defendant retain a qualified consultant acceptable to Plaintiff ("Approved Accessibility Consultant")[2] who shall assist it in improving the accessibility of its Website, including all third party content and plug-ins, so the goods and services on the Website may be equally accessed and enjoyed by individuals with vision related disabilities. | 30-days of Court's Order |
| 10(b) | Defendant work with the Approved Accessibility Consultant to ensure that all employees involved in website development be given accessibility training on a biennial basis, including onsite training to create accessible content at the design and development stages. | 180-days of Court's Order and every 180-days thereafter until the Court orders otherwise |
| 10(c) | Defendant work with the Approved Accessibility Consultant to perform an automated accessibility audit on at least a quarterly basis to evaluate whether Defendant's Website may be equally accessed and enjoyed by individuals with vision related disabilities on an ongoing basis. | 90-days of Court's Order and every 90-days thereafter until the Court orders otherwise |

---

[2] For purposes of this Motion, Plaintiff designates TPGi the Approved Accessibility Consultant. *See* https://www.tpgi.com/about/ ("TPGi (Previously known as The Paciello Group) is an accessibility solutions provider that supports all phases of accessibility through best-in-class management software and professional services.") (last accessed August 5, 2021).

| | | |
|---|---|---|
| 10(d) | Defendant work with the Approved Accessibility Consultant to perform end-user accessibility/usability testing on at least a quarterly basis with said testing to be performed by humans who are blind or have low vision, or who have training and experience in the manner in which persons who are blind use a screen reader to navigate, browse, and conduct business on websites, in addition to the testing, if applicable, that is performed using semi-automated tools. | 90-days of the Court's Order and every 90-days thereafter until the Court orders otherwise |
| 10(e) | Defendant incorporate all of the Approved Accessibility Consultant's recommendations within sixty (60) days of receiving the recommendations. | 60-days of receiving recommendations until the Court orders otherwise |
| 10(f) | Defendant work with the Approved Accessibility Consultant to create an Accessibility Policy that will be posted on its Website, along with an e-mail address, instant messenger, and toll free phone number to report accessibility-related problems. | 60-days of the Court's Order |
| 10(g) | Defendant directly link from the header on each page of the Website a statement that indicates that Defendant is making efforts to maintain and increase the accessibility of its Website to ensure that persons with disabilities have full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Defendant through the Website. | 60-days of the Court's Order |
| 10(h) | Defendant accompany the public policy statement with an accessible means of submitting accessibility questions and problems, including an accessible form to submit feedback or an email address to contact representatives knowledgeable about the Accessibility Policy. | 60-days of the Court's Order |
| 10(i) | Defendant provide a notice, prominently and directly linked from the header on each page of the Website, soliciting feedback from visitors to the Website on how the accessibility of the Website can be improved. The link shall provide a method to provide feedback, including an accessible form to submit feedback or an email address to contact representatives knowledgeable about the Accessibility Policy. | 60-days of the Court's Order |

| | | |
|---|---|---|
| 10(j) | Defendant provide a copy of the Accessibility Policy to all web content personnel, contractors responsible for web content, and Client Service Operations call center agents ("CSO Personnel") for the Website. | 60-days of the Court's Order |
| 10(k) | Defendant train no fewer than three of its CSO Personnel to automatically escalate calls from users with disabilities who encounter difficulties using the Website. Defendant shall have trained no fewer than three of its CSO personnel to timely assist such users with disabilities within CSO published hours of operation. Defendant shall establish procedures for promptly directing requests for assistance to such personnel including notifying the public that customer assistance is available to users with disabilities and describing the process to obtain that assistance. | 180-days of Court's Order |
| 10(l) | Defendant modify existing bug fix policies, practices, and procedures to include the elimination of bugs that cause the Website to be inaccessible to users of screen reader technology | 180-days of Court's Order |
| 10(m) | Plaintiff, his counsel, and its experts monitor the Website for up to two (2) years after the Approved Accessibility Consultant validates the Website is free of accessibility errors/violations to ensure Defendant have adopted and implemented adequate accessibility policies. To this end, Plaintiff, through his counsel and its experts, shall be entitled to consult with the Approved Accessibility Consultant at their discretion, and to review any written material, including but not limited to any recommendations the Approved Accessibility Consultant provides Defendant. | Until the Court orders otherwise |

3. Ordering Defendant pay Plaintiff $18,722.00, an amount equal to the reasonable attorneys' fees and costs that Plaintiff has incurred to date, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, within 45-days of this Order. The payment shall be made to "Carlson Lynch, LLP" and sent via next-day delivery to Carlson Lynch, LLP, Attn: Nicholas A. Colella, 1133 Penn Avenue, 5th Floor, Pittsburgh, PA 15222.

4. Retaining jurisdiction for a period of two (2) years after the date on which the Approved Accessibility Consultant validates the Website is free of accessibility errors/violations to ensure Defendant has complied with the Court's Order, and adopted and implemented adequate accessibility policies. Until ordered otherwise, Plaintiff, as the prevailing party, may file subsequent fee petitions to reimburse him for any costs he incurs in the future to monitor Defendant's compliance with the Court's Order. *See People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 235 (3d Cir. 2008) ("This Court, like other Courts of Appeals, allows fees to be awarded for monitoring and enforcing Court orders and judgments.").

Date: August 5, 2021

Respectfully submitted,

*/s/ Nicholas A. Colella*
R. Bruce Carlson
Nicholas A. Colella
CARLSON LYNCH, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Phone: (412) 322.9243
bcarlson@carlsonlynch.com
ncolella@carlsonlynch.com

*Counsel for Plaintiff*